## Commonwealth v. Deneen

*Merrill W. Kerlin*, for Commonwealth.

*Albert Foster* and *George S. Black*, for defendant.

SHEELY, P. J., March 18, 1960.—The question presented in this case is whether a support order entered

in a proceeding commenced under section 733 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4733, may be amended by petition so as to include support for a child born to defendant and relatrix after the entry of the order, and possibly increased to provide for such child.

On September 18, 1959, an order was entered against defendant for the support of his three minor children in the amount of $30 per week, defendant to permit his wife and children to continue to live in a house belonging to him and to pay all taxes, repairs and utilities, except telephone. At the same time an order of support was denied to his wife. Relatrix was pregnant at the time and a fourth child was born on October 27, 1959. Relatrix then filed a petition to have the support order increased and amended to provide for this child.

Defendant filed an answer to the petition denying that he was the father of the child and contending that the court has no jurisdiction in this proceeding to provide for the support of the after-born child since the action was begun by a complaint filed before a justice of the peace under section 733 of The Penal Code, and such complaint in no way alleged a failure of defendant to support such child. If defendant is correct in this contention as to jurisdiction it would be necessary for relatrix to lay another information before a justice of the peace, and defendant to be arrested again and held in bail for court, another hearing to be held and another support order entered, and thereafter to encounter the administrative difficulties in dealing with two orders for support of the same family.

A full hearing was held on the petition to amend, with a ruling on the jurisdictional question reserved. Defendant completely failed to show that he was not the father of the child, as he should have anticipated since at the original hearing he testified that he spent

three nights a week with his wife up until about May 1959, and that he had relations with her in June of that year, although he knew of her prior adultery.

The contention of lack of jurisdiction is based on the fact that section 733 of The Penal Code provides that if any husband or father separates himself from his wife or from his children or neglects to maintain his wife or children, any magistrate "upon information made before him . . . by his wife or children, or either of them, or by any person, may issue his warrant for the arrest of the person . . ." The court, after hearing, may order the husband or father "being of sufficient ability, to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance *of the said wife or children*," etc. It is contended that the phrase "of the said wife or children" must refer to the wife or children from whom it was alleged in the information he had separated himself, or whom he had neglected to maintain. Therefore the court's authority to order support is limited to those persons named in the information.

This contention overlooks the Act of June 19, 1939, P. L. 440, 17 PS §263, which provides that: "Any order heretofore or hereafter made by any court of this Commonwealth for the support of a wife, child or parent, may be altered, repealed, suspended, increased, or amended, and the said court may, at any time remit, correct, or reduce the amount of any arrearages, as the case may warrant." This statute was designed to provide for changing circumstances of the parties and its operation is not limited merely to a change in financial ability, although the power therein conferred is most frequently exercised in that situation. The courts, in referring to the control of the court over support orders, have consistently said that "orders in non-support cases have never been regarded as final, in as much as they may be increased, reduced, or vacated

where the financial condition of the parties changes, or *where other proper reasons are shown"*: Commonwealth ex rel. Barnes v. Barnes, 140 Pa. Superior Ct. 397, 399 (1940), and cases therein cited; Commonwealth ex rel. Camp v. Camp, 146 Pa. Superior Ct. 24 (1941). In Commonwealth v. Crabb, 199 Pa. Superior Ct. 209, 211 (1935), the court used the expression "or for such reasons as in the reasonable discretion of the court may seem proper," and in Commonwealth ex rel. Isaacs v. Isaacs, 124 Pa. Superior Ct. 450, 455 (1936), it was held that a support order could be opened upon petition "if the circumstances, which existed when the application in the first instance was made, have altered." In Commonwealth ex rel. Silverman v. Silverman, 180 Pa. Superior Ct. 94, 98 (1955) the court said: "The legislature gave the courts broad powers over their support orders by the Act of June 19, 1939, P. L. 440, 17 PS 263 and section 10 of the Act of July 13, 1953, P. L. 431, 62 PS 2043.40."

The birth of an additional child after the entry of a support order is certainly an alteration of the circumstances which existed when the application in the first instance was made, and one which the court in the exercise of a reasonable discretion would deem proper

Defendant's technical interpretation of section 733 is too narrow. He would construe the section as providing for the support of each person named in the information individually. But rarely does a support order designate how much shall be paid for each individual provided for. Rather, it treats the wife and children, or the children alone, as a family unit, and provides how much of defendant's income should be applied for the support of that unit. Thus, the fact that one child becomes self-supporting does not necessarily mean that the support order for the children should be reduced proportionately. This "family unit" view is supported in Commonwealth ex rel. Schofield v.

Schofield, 173 Pa. Superior Ct. 631 (1953), where the parties separated and the two younger children remained with the wife and the two older children went to Florida with the father. The wife applied to the municipal court for support for the two children with her. Later she acquired custody of the two older children and the father instituted a habeas corpus proceeding to regain custody of them. The municipal court dismissed the habeas corpus proceeding and made an order for the support of the four children. On appeal the father contended, inter alia, that the court had no authority to enter an order for the two younger children since their support had been provided for by the order of a Florida court, and the wife had failed to show any change in circumstances. The Superior Court said: "The shifting of the custody of the two older children to the mother was a material change of circumstances which warranted an order for the support of the family unit."

We conclude that a support order may be amended by petition to provide for the support of children born after the original order was entered and that defendant is deprived of no rights by such procedure. In his answer to the petition to amend he may raise any defense which he could have raised in an original proceeding, as to the additional child, and have that defense passed upon, as was done in this case.

The question remains as to the amount by which the support order should be increased. The existing order is $30 per week for the three older children, net $10 per week per child, defendant to permit his wife and children to live in a house belonging to him and to pay all taxes, repairs and utilities, except telephone. Prior to the separation of the parties defendant spent about half his nights with his wife and family at their home near Warfordsburg and the remaining time with his mother at her home in Buck Valley. He operated his

mother's farm and was also interested in two canning factories, being the manager of one of them. His income from the canning factories in 1958 was about $1,500, but the factories did not operate in 1959 due to a large carry-over of inventory from the previous year. He was also a public school teacher and his salary for the year 1958-1959 was $4,700, or $346.22 per month, take home pay. At the hearing on September 18, 1959, he testified his personal expenses were about $70 to $75 per month and he helped his mother partly.

At the hearing on February 20, 1960, defendant testified that his salary had increased to $4,900 per year, or $356.56 per month, take home pay. He had abandoned the farming operation on his mother's farm and the land was placed in the soil bank. He also testified that his living expenses had increased to about $1,800 per year, or about double the expenses of the previous year, due to giving up farming operations and the assumption of more responsibility at his mother's home. He also testified that the cost of maintaining the home for his children under the court's order was $557.92 per year, including hospitalization insurance for the children of $40.20, and repairs of $75, which he did not expend last year. He estimated the rental value of the property used by the family as $60 per month, which is high for a rural property.

We have held that defendant's wife was not entitled to support from him. However, with four small children to care for the mother cannot be expected to earn anything to contribute to their support. The whole burden of supporting the children must rest upon defendant to the extent of his ability.

Defendant's take home pay from his school position is $4,278.72 a year. Allowing him the full $1,800 per year claimed as personal expenses and $557.92 per year expense in maintaining the home would leave $1,-920.80 available for other purposes without considering income from the soil bank or prospective income

from the canning factories. This would amount to $36.94 per week. To arrive at defendant's total income we would have to consider his take home pay from his school position of $4,278.72, his prospective earnings from the canning factories of $1,500 and the rental value of his real estate of $720, or a total annual income of $6,498.72.

Viewing the situation from the family standpoint, the wife testified at the September hearing that her household expenses consisted of $2.50 per week for bread, etc., $8 to $10 for groceries, $2.50 for school lunches, $3.64 for milk, $10 for clothing, and $2 for medical attention, or a total of $20.64 which does not seem exorbitant for three children. Adams County pays $1.15 a day or $8.05 per week for board of foster children and in addition pays for their clothing and medical expenses.

We conclude that defendant is of sufficient financial ability to contribute $35 per week for the support of his four children in addition to providing a home for them. This will amount to $1,820 per year in cash which, together with the maintenance expenses of $557.92, and the rental value of the real estate of $720, would amount to $3,097.92, or less than half of defendant's income.

And now, March 18, 1960, it is ordered and decreed that the support order entered by this court in the above case on September 18, 1959, be and the same is hereby amended to provide for the support of the four children of defendant, including Trecila Belle Deneen, born on October 27, 1959, and defendant is directed to pay the sum of $35 per week for the support of his said four children and to permit his wife and children to continue to live in the house belonging to him and to pay all taxes, repairs and utilities, except telephone. Costs to be paid by defendant. An exception to this order is noted for defendant.