500

## Commonwealth ex rel. Hoffman, Appellant, *v.* Hoffman.

Argued October 10, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Virginia Funk,* with her *Michael Edelman,* for appellant.

*Paul M. Goldstein,* with him *Herman Moskowitz* and *Stark and Goldstein,* for appellee.

OPINION BY WOODSIDE, J., November 12, 1957:

The Municipal Court of Philadelphia entered an order of $35 per week against the defendant for the support of his wife and child. The wife appealed on the ground that the court below abused its discretion by entering an order which is too low.

The original order was entered December 8, 1954, in the amount of $85 per week. Although entered as a "temporary" order, it remained at this amount until March 26, 1957, when, upon defendant's motion, it was reduced to $60 per week. On April 4th, it was raised to $70 per week, and on May 7th, reduced to $35 per week. Still being carried as a "temporary" order, on June 4th, it was entered as a permanent order at the request of the wife.

The court was correct in making the order permanent when the wife requested it. A support order is never permanent in the sense that it cannot be modified upon the showing of changed conditions, but it would be improper for a court to make "temporary"

orders over a long period of time, thereby defeating the right of appeal.

It is to be noted that during the period between March 18th and May 13th, the defendant was ordered to pay $85, $60, $70 and $35—four different weekly sums in an 8 week period. Although support orders must be geared to the present, and circumstances occasionally justify frequent changes in the amount of the order, nevertheless, we question the advisability of changing an order as frequently as this one was changed within a two month period.

We think the court below took too limited a view of this case. The defendant contends that he is without property or income because he is unemployed, and because both he and the business in which he is a partner are in bankruptcy.

The court is not restricted to the defendant's actual earnings as the sole basis of a support order, but should also consider his earning capacity or power: *Commonwealth ex rel. Wieczorkowski v. Wieczorkowski*, 155 Pa. Superior Ct. 517, 519, 38 A. 2d 347 (1944) and his standard of living: *Commonwealth ex rel. Mass v. Mass*, 170 Pa. Superior Ct. 545, 87 A. 2d 793 (1952). This is particularly true where there may be some question as to the defendant's good faith: *Commonwealth ex rel. Schofield v. Schofield*, 173 Pa. Superior Ct. 631, 646, 98 A. 2d 437 (1953).

What is the defendant's earning capacity? The evidence shows that he was a partner with his sister and brother-in-law in a business known as Consumers Buying Service. He was the managing partner, and for several years he was drawing from the partnership $200 per week, plus certain expenses, including $15 per week automobile expenses. The partnership also paid his hospitalization and his income tax so that the $200 per week was tax free.

In 1956 he obtained from the partnership a $10,000 check which he converted into cash. He obtained a second check of $20,000 to invest in a Florida business venture. The venture failed, but out of it $16,000 *in cash* found its way back to the defendant. This, says the defendant, he spent in living expenses and lost at the race tracks. At the same time he was receiving expense money from the partnership and $200 per week tax free.

The evidence shows that he is contributing $15 per week for the support of his mother, who lives in the Presidential Apartments, has a deposit box in New York City in joint names with the defendant, and who bought the Cadillac automobile from the partnership. The defendant had exclusive use of the Cadillac when it was the property of the partnership. He still has exclusive use of it.

There is no doubt that a man may be successful in business one year and fail in it the next. His dependents should share in his successes and his failures. Here, as is frequently the case when the parties are separated, the wife and child shared meagerly in the tens of thousands of dollars he was squandering in 1956. Now, in 1957 it may be necessary for the defendant to make some personal sacrifices so that his wife and child may have sufficient income to pay for necessities.

The court is not bound by the defendant's testimony that he has no property and can secure no employment. In a support case the court may make its own deductions from the evidence and the attending circumstances. *Commonwealth ex rel. Wieczorkowski v. Wieczorkowski*, supra, 155 Pa. Superior Ct. 517, 38 A. 2d 347 (1944).

There is no question that the appellant's earning capacity is not reflected by his present status. See

*Commonwealth ex rel. Glener v. Glener*, 173 Pa. Superior Ct. 108, 110, 94 A. 2d 102 (1953).

Indeed, the trial judge when discussing the $35 order said, "I know that the order should be higher than that because he has the earning ability, the capacity to earn more," and at another time, said: "Of course, this man can go out and get a job tomorrow, but the kind of a job he can get tomorrow would not warrant him paying more than the amount of money in the temporary order that I made. I would like to see this man get a job commensurate with his ability to earn, his capacity to earn. This is not the type of a man who can go out and earn only $100 a week. He can make a lot more than that, and he has made a lot more than that and he has the ability to do it, but we have to give him a little time to find a position and place where he can earn it."

The amount which the defendant should be ordered to pay is largely in the discretion of the trial court, and its judgment will be disturbed by an appellate court only for a clear abuse of discretion. *Commonwealth ex rel. Schofield v. Schofield,* supra, 173 Pa. Superior Ct. 631, 647, 98 A. 2d 437 (1953).

We are of the opinion that in the light of all of the evidence in this case, it was an abuse of discretion to reduce the order to $35 per week, and that the order of the court made March 26, 1957, directing the defendant to pay $60 per week should be reinstated as of June 4, 1957, the date when the order of $35 per week was made permanent.

If, after a reasonable time, the defendant's circumstances become sufficiently fixed at a level which will warrant modification of this order either up or down, the court below, of course, may modify it.

The order is modified to $60 per week from June 4, 1957.